UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62197-CIV-MARRA

In re

VoIP, Inc.,

    Debtor.
_____/

BARBARA MITTMAN, *et al.*,

    Appellants,

v.

SONYA SALKIN, CHAPTER 7 TRUSTEE,

    Appellee.
_____/

**AMENDED OPINION AND ORDER[1]**

    THIS CAUSE is before the Court on appeal by Appellants Barbara Mittman, Grushko & Mittman P.C., Alpha Capital Anstalt, Bristol Investment Fund, Ltd., Centurion Microcap L.P., Ellis International, Ltd., Walehaven Capital Fund, Ltd., Platinum Long Term Growth I and II, Inc., Brio Capital L.P., CMS Capital, and Osher Capital (collectively "Appellants") of the Order Granting Trustee's Motion to Compromise Controversy and the accompanying Opinion of Bankruptcy Judge Raymond B. Ray, entered on August 9, 2011. The Court has carefully considered the briefs of the parties and is otherwise fully advised in the premises.

---

[1] The Amended Order corrected a scrivener's error on page 13 with regard to identification of the underlying order being affirmed.

## I. Background[2]

*A. Procedural Background*

Debtor VoIP, Inc. ("VoIP" or "the Debtor") was a provider of telecommunication goods and services relating to "voice over" Internet communications. VoIP stopped operating at the end of 2007. VoIP made no effort to defend pending litigation, and ultimately had default judgments entered against it in three cases. The first case, Black Forest International, LLC v. VoIP, Inc., Case No. 07-32607 (Fla. 17th Cir. Ct. 2007), resulted in a default judgment of $338,500 in favor of Black Forest. The second case, Angel v. VoIP, Inc., Case No. 07-35933 (Fla. 17th Cir. Ct. 2007), resulted in a default judgment of $89,109.25 in favor of Allen Angel. The third case, Kosh v. VoIP, Inc. Case No. 08-00450 (Fla. 18th Jud. Cir. Ct. 2008), resulted in a default judgment of $391,000 in favor of Stuart Kosh. The judgment in the first case is now owned by Noctua Fund, LP ("Noctua"), and the judgment in the third case is now owned by Garyn Angel. All three of these cases were subsequently consolidated into one state court case ("The Consolidated State Court Action").

The judgment creditors in the state court cases attempted to collect their default judgments through writs of garnishment. Noctua was able to collect $102,000 by virtue of a garnishment proceeding directed towards Wachovia Bank, reducing the balance owed to the three creditors in the Consolidated State Court Action to approximately $725,000. Another writ of garnishment was served on Vonage Network, Inc. ("Vonage"), who owed VoIP

---

[2] Unless otherwise noted, the underlying facts are derived from various documents filed in this docket, the underlying bankruptcy docket, and the related adversary proceedings. These facts, which appear to be undisputed but are derived from mainly adversarial documents, are provided for background purposes only, do not constitute findings of fact by the Court, and shall serve no precedential purpose in future judicial proceedings.

approximately $840,000 for services rendered prior to the Debtor's cessation of operations. Shortly thereafter, Barbara Mittman intervened on behalf of herself and a group of creditors ("Mittman Group") that claimed to own approximately $20,000,000 of debt owed by VoIP. This debt stemmed from VoIP's issuance of stock and the raising of capital while it was engaging in normal operations. Mittman intervened to assert a senior secured interest in the disputed funds on behalf of the the Mittman Group. Vonage subsequently initiated an interpleader action and, upon the entry of an agreement order, placed the $840,000 in a trust account managed by Vonage's law firm. The state court set a jury trial for June 3, 2009, to determine the respective rights of the default judgment creditors and the Mitman Group.

On June 2, 2009, Noctua, Garyn Angel, and Carrie Angel filed an involuntary petition for bankruptcy against VoIP. Case No. 09-BKC-20935-RBR ("Main Bankruptcy Docket"). On October 9, 2009, the Consolidated State Court Action was removed to the Bankruptcy Court by Marika Tolz, who at that time, was the Chapter 7 Trustee of VoIP. Case No. 09-BKC-02136-RBR ("State Court Removal Docket").

On November 30, 2009, Trustee Tolz and Noctua jointly filed an adversary proceeding against the Mittman Group and all other creditors. Case No. 09-BKC-20935-RBR ("Mittman Adversary Proceeding"), DE 1. The Adversary Complaint sought to: (1) avoid and recover preferential and fraudulent transfers; (2) determine the allowance or disallowance of claims against the bankruptcy estate,(3) determine the validity, extent, and priority of liens, claims and interests in property of the estate; and (4) turnover property of the estate. Id. The Adversary Complaint alleged that the Mittman group engaged in overreaching and fraudulent conduct through a pattern of transferring VoIP's assets to their benefit in order to gain financial and

3

operational control of the company at the expense and detriment of VoIP's bona fide creditors and shareholders. Id. at ¶ 29. The Adversary Complaint not only sought to avoid the transfers of funds to the Mittman Group, but also sought damages above and beyond money owed due to the group's allegedly fraudulently conduct. Id.

On April 22, 2011, Alpha Capital Anstalt and Bristol Investment Fund, Ltd., two members of the Mittman Group, filed a Motion for Derivative Standing to Pursue Claims Against Mark Baum, James Panther, and Noctua Fund, on Behalf of the Debtor's Estate. Main Bankruptcy Docket, DE 137. The Motion alleged that Baum and Panther entered into an agreement with VoIP to perform certain capital raising services in exchange for S-8 shares of VoIP stock. Id. at ¶ 1. The Motion allleged that Code of Federal Regulation Section 230.405 only allows S-8 shares to be issued if the services performed are not capital raising services. Id. The motion further asserted that because the stock was issued in violation of C.F.R. § 230,405 the transfers to Baum and Panther were avoidable as fraudulent. Id.

The Motion for Derivative Standing also asserted a claim against Noctua. Id. at ¶ 2. Noctua is the successor-in-interest to Black Forest, a corporation that allegedly made a loan to VoIP's Chief Technology Officer ("CTO") in the amount of $300,000. Id. After the CTO defaulted on the loan, the movants alleged that VoIP assumed the loan without receiving any consideration for the assumption. Id. This loan served as the basis for Black Forest's default judgment against the Debtor. Noctua subsequentely acquired Black Forest's interest in that judgment. Id. Accordingly, the movants alleged that Noctua's interest was avoidable as a

fraudulent transfer.  Id.[3]

On July 11, 2011, Trustee Sonya Salkin, the successor Chapter 7 Trustee of VoIP's estate, initiated an adversary proceeding against VoIP Acquisition Company ("VAC"), an affiliate of VoIP, and WABEC, LLC.  Case No. 11-BKC-02327-RBR ("WABEC Adversary Proceeding"), DE 1.  In the Adversary Complaint, the Trustee reasserted the allegations set forth in the Mittman Adversary Proceeding, namely that the Mittman Group, " acting in concert with each other, and under the direction and control of [Barbara] Mittman, as 'Collateral Agent,' and her law firm Grushko & Mittman, P.C. as 'Escrow Agent,' knowingly and wrongfully engaged in a scheme to systematically exercise, exert and obtain control over the financial affairs, business operations and management of [VoIP]."  WABEC Adversary Proceeding, DE 1 at ¶ 15.

The Adversary Complaint alleged WABEC, LLC was created to further the scheme engaged in by the Mittman Group.  Id. at ¶¶ 17-20.  The Mittman Group is divided into a "senior and junior class, with the members of the senior class consisting of Whalehaven Capital Fund, Ltd.; Alpha Capital Anstalt; Bristol Investment Fund; Ellis International; and Centurion Microcap, L.P."  Id. at ¶ 17.  WABEC represents a compilation of the first initials of each of the

---

[3] On November 4, 2011, Bristol Investment Fund, Ltd., Alpha Capital Anstalt, Whalehaven Capital Fund, Ltd., Ellis International, Ltd., and Centurion Microcap, L.P. (the five entities that Trustee Salkin alleges constitute WABEC, LLC) filed suit against Black Forest, Noctua, Mark Baum, and James Panther for tortious interference with prospective economic advantage (Count I) and tortious interference with contract (Count II).  Case No. 11-027267 (Fla. 17th Cir. Ct. 2011).  The allegedly offending conduct asserted in the claims is identical to that alleged in the Derivative Suit.  Mark Baum removed that case to the Bankruptcy Court on December 19, 2011.  Case No. 09-BKC-20935-RBR.  On April 9, 2012, the Bankruptcy Court remanded the matter back to the state court because "neither the debtor nor the Chapter 7 Trustee is a party to the State Court Action." Id. at DE 13.  The Bankruptcy Court held that "While some of the factual matters alleged in the Complaint may overlap with factual matters relevant to claims being pursued in this Court by the Trustee, this overlap is not sufficient to justify this Court's involvement in an intercreditor dispute."  Id.

"senior investors" in the Mittman Group." Id. at ¶ 18. In October 2008, WABEC, LLC acquired all of the patents owned by VoIP and VAC, as well as VAC's ownership interest in RAZRclick.com, Inc. Id. at ¶ 19. WABEC is currently engaged in litigation against Google for the alleged misappropriation of and infringement of VoIP and VAC's intellectual property. WABEC is seeking damages in excess of a billion dollars. Id. at ¶ 24. The Adversary Complaint seeks the avoidance of transfers of the intellectual property in question to WABEC and a declaratory judgment that VAC is the alter ego of VoIP. Id. at pp.6-10.

A summary of all relevant interests as they existed in July, 2011 is as follows:

- Noctua is the successor-in-interest to a default judgment of $338,500 entered in favor of Black Forest and against VoIP. That judgment arises out of a defaulted loan assumed by VoIP that was challenged as fraudulent in a derivative suit initiated by members of the Mittman Group. Noctua has collected approximately $102,000 of that judgment through garnishment proceedings against Wachovia Bank. Noctua was one of three petitioning creditors that initiated the involuntary bankruptcy of VoIP, was a co-plaintiff in the Mittman Adversary Proceeding, and is a defendant in the derivative suit.
- Allen Angel is the current owner of a default judgment of $89,109.25 entered against VoIP. Allen Angel was one of the three petitioning creditors that initiated the involuntary bankruptcy of VoIP, but is not involved in any other relevant litigation.
- Garyn Angel is the successor-in-interest to a default judgment of $391,000 entered in favor of Stuart Kosh and against VoIP. Garyn Angel was one of the three petitioning creditors that initiated the involuntary bankruptcy of VoIP, but is not involved in any other relevant litigation.
- Mark Baum and James Panther have no claims against VoIP's estate, but are being sued for fraudulent conversion of VoIP's assets by members of the Mittman Group in the Derivative Suit.
- The Mittman Group is a constituency of 11 creditors that have set forth over $20,000,000 worth of claims against the VoIP estate. Trustee Salkin alleges that five of those creditors are "senior creditors" that formed WABEC, LLC. Various members of the Mittman Group are plaintiffs in the Derivative Suit, while the entire group is being sued in the Mittman Adversary Proceeding for fraudulent conversion of VoIP's assets.
- WABEC, LLC, is the recipient of intellectual property from VoIP and VoIP's affiliate: VAC. WABEC is currently suing Google for infringement of

      intellectual property that WABEC acquired from VoIP and VAC, seeking over one billion dollars worth of damages. WABEC is also being sued by Trustee Salkin in an adversary proceeding that seeks the avoidance of the transfer of intellectual property from VoIP and VAC to WABEC.

*B. Settlement Agreements*

On May 5, 2011, Trustee Salkin filed a Motion to Compromise Controversy with the Mittman Group. Main Bankruptcy Docket, DE 140. The terms of the agreement provided that: (1) the Mittman Group will pay $160,000, approximately $115,000 of which was to be used to pay the Trustee, the rest going to the estate; (2) the estate will receive five percent of any funds recovered by WABEC in its suit against Google; (3) the Trustee will execute an assignment of all intellectual property rights owned by VoIP or the estate, including any claims against Google, to WABEC; and (4) the dismissal of all claims against the Mittman Group. Id. at ¶ 11(B). Noctua, Garyn Angel, and Allen Angel all filed objections to the Trustee's Motion, id. at DEs 148-49, and a hearing was held on May 31, 2011. In that hearing, the Bankruptcy Court first learned of a competing offer that was made by other creditors, and thus decided to dismiss the pending Motion to Compromise Controversy without prejudice to allow for both offers to be considered. DE 208. Accordingly, the Motion to Compromise Controversy was dismissed without prejudice on June 1, 2011. DE 155.

On June 27, 2011, Trustee Salkin filed a Motion to Approve Compromise and Settlement with Noctua, Mark Baum, James Panther, and Garyn Angel ("Noctua Group"). DE 162. The terms of that agreement provided that: (1) the Noctua Group will pay $160,000 to help fund the administration of the bankruptcy estate; (2) the Noctua Group will pay $7,500 to settle the fraudulent conversion claims in the derivative standing motion; (3) the Noctua Group will

receive one third of any recovery received by the estate against Google, should the estate acquire title from WABEC, LLC for the intellectual property of VoIP; and (4) the Trustee covenants not to sue the derivative suit defendants for any claims arising from that suit or any unasserted claims. DE 162 at 4-5. After the agreement was filed with the Court but before it was approved, the Trustee filed the WABEC Adversary Proceeding on July 11, 2011. DE 168. The Mittman Group filed its opposition to the Settlement Agreement on July 25, 2011, and hearings were held on July 27, 2011, and August 8, 2011.

The hearings were held to determine whether the Bankruptcy Court should: (1) allow the Derivative Claims to go forward; and (2) approve the proposed settlement by the Noctua Group. At the hearings the Bankruptcy Court heard arguments for all parties involved and the testimony of Trustee Salkin and her attorney, Jason Slatkin. Counsel for the Mittman Group solicited testimony from Trustee Salkin that she did not <u>personally</u> conduct an investigation of the claims at issue; rather, she relied on reports and advice provided by her counsel, Jason Slatkin. Mr. Slatkin then testified with regard to what evidence he used to advise Trustee Salkin to take accept Noctua Group's offer.

On August 9, 2011, the Bankruptcy Court entered the Order Granting the Trustee's Motion to Compromise Controversy, which is the subject of this appeal. After articulating the appropriate test for reviewing settlement agreements set forth in <u>Wallis v. Justice Oaks II, Ltd.</u>, 898 F.2d 1544 (11th Cir. 1990), the Bankruptcy Court stated:

> Here, the settling parties will avoid the additional expense, inconvenience, and delay attendant upon litigating the avoidance claims that are being released by the Trustee and which are the subject of the derivative standing motion. The costs involved in discovery, pre-trial proceedings, summary judgment proceedings, trial, post-trial matters and potential appeals are likely to far outweigh any

>potential benefit to the estate.  Therefore, the interest of the estate is best served by the instant proposed settlement.

DE 1.  The Mittman Group now appeals that Order.

## II.  Legal Standard

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*.  In re Globe Manufacturing Corp., 567 F.3d 1291, 1296 (11th Cir. 2009); In re Club Assoc., 951 F.2d 1223, 1228-29 (11th Cir. 1992).

## III.  Discussion

Appellants make four challenges to the Bankruptcy Court's approval of the settlement at issue: (1) the Trustee failed to present adequate evidence in support of each fo the four Justice Oaks factors; (2) the Trustee did not adequately investigate the claims and did not present sufficient information to the Bankruptcy Court to enable it to make an informed decision; (3) the Trustee and the Bankruptcy Court ignored the paramount interest of the majority creditors; and (4) the settlement creates a conflict of interest for the Trustee.  Each of these allegations, which will be discussed independently below, relate to the Bankruptcy Court's Findings of Fact which are reviewed for clear error.  See In re Globe Manufacturing, 567 F.3d at 1296.

A.  *Justice Oaks* Factors

In Wallis v. Justice Oaks II, Ltd., 898 F.2d 1544 (11th Cir. 1990), the Eleventh Circuit Court of Appeal's articulated four factors that bankruptcy court's should use in deciding whether to approve a proposed settlement.  The four factors are:

>(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable

9

views in the premises.

Justice Oaks, 898 F.2d at 1549. "Courts consider these factors to determine the 'fairness, reasonableness, and adequacy of a proposed settlement agreement.' " In re Chira, 567 F.3d 1307, 1312-13 (11th Cir. 2009) (citing In re A & C Prop, 784 F.2d 1377, 1381 (9th Cir. 1986)). "Such a determination is much like that required of a court before it may grant a preliminary injunction." Id. (citing Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc., 600 F.2d 1194, 1188 (5th Cir. 1979)).

The Court begins its review by noting that the "settlement" at issue is between Trustee Salkin and the Noctua Group to settle the estate's claims of fraudulent conversion. Accordingly, the Court must determine whether the Bankruptcy Court committed clear error in determining that the Trustee's settlement of those fraudulent conversions claims was fair, reasonable and adequate. In re Chira, 567 F.3d at 1312-13. The Bankruptcy Court was **not** tasked with applying the Justice Oaks factors to the estate's claims against the Mittman Group, WABEC, or Google. Further, the Bankruptcy Court was **not** responsible for determining whether the ultimately approved offer was better than the offer presented by the Mittman Group. Rather, the Bankruptcy Court simply had to determine whether the Trustee's relinquishing of all claims against the individual members of the Noctua Group was in the best interests of the estate in light of the Justice Oaks factors. See Id.

While the Bankruptcy Court did not provide a factor-by-factor analysis either orally or in its order, it did expressly conclude that the potential benefits associated with the fraudulent conversion claims were outweighed by the certain costs associated with litigating those claims. DE 1. After applying the Justice Oaks factors, the Court concluded the settlement was, in fact, in

the best interest of the estate.  Id.  The Court finds the decision of In re Simmonds, 2010 WL 2976769 at (S.D. Fla. 2010), to be persuasive here.  In Simmonds, the court held that because "the Bankruptcy Court was mindful of the Justice Oaks factors in approving the settlement," the bankruptcy court did not abuse its discretion.  Id. at *4.  Here, a plain reading of the order on review reveals that the Bankruptcy Court was clearly "mindful of the Justice Oaks factors in approving the settlement."  After engaging in a thorough evidentiary hearing where both sides presented evidence and arguments with regard to whether the settlement was in the best interest of the estate, the Bankruptcy Court approved the settlement.  Based on the rationale articulated in Simmonds, the Court concludes that this decision was not clear error.

B. *Adequacy of Trustee's Investigation*

Appellants next assert that the Trustee failed to adequately investigate the claims.  The crux of Appellants' argument is that Trustee Salkin lacked personal knowledge about the claims, and therefore could not adequately appraise the Bankruptcy Court of all relevant facts.  The transcripts, however, reveal that although the Trustee may not have had personal knowledge about the claims, she did rely heavily on the advice and reports of her attorney, Jason Slatkin.  Appellants provide no authority that a Trustee's reliance on her attorney to help assess the soundness of potential claims owned by the estate is improper.  Mr. Slatkin testified as to the merits of the complaints against the Noctua Group, and Appellants do not challenge his ability to properly appraise the Bankruptcy Court.  Accordingly, the Court rejects Appellants' assertion that the Trustee failed to properly investigate the claims against the Noctua Group.

C. *Trustee Ignored Interest of Creditors*

Next, Appellants assert that the Trustee and the Bankruptcy Court ignored the paramount

interests of the majority creditors. This argument, however, is simply an attempt to reassert its position that the Bankruptcy Court failed to properly apply the Justice Oaks factors, the fourth of which requires the Court to consider the paramount interests of the creditors. For reasons discussed in subsection A, the Court similarly rejects this argument.

D. *Conflict of Interest*

Finally, Appellants assert that the settlement agreement creates a conflict of interest between the Trustee and the Noctua Group. Appellants argue that the settlement agreement aligns the interests of the Noctua Group and the Trustee with regard to the Google litigation, despite the fact the Trustee is simultaneously tasked with determining the priority of the Noctua Group's liens against the estate. Based on this "conflict," Appellants claim "it is not reasonable to believe that the Trustee will remain completely neutral in resolving the pending lien priority dispute that is ongoing between [her, the Noctua Group, and the Mittman Group]." Motion at 14.

The Court notes that the Bankruptcy Court considered and rejected this argument in its July 27, 2011, hearing. Appellants have failed to provide any authority that supports the notion that concurrent interests between a Trustee and a creditor creates a conflict of interest. Absent any such authority that provides that such concurrent interests creates a conflict as a matter of law, the Court defers to the sound discretion of the Bankruptcy Court. Accordingly, this argument is rejected.

## IV. Conclusion

For the aforementioned reasons, the Order Granting Trustee's Motion to Compromise Controversy and the accompanying Opinion of Bankruptcy Judge Raymond B. Ray, entered on August 9, 2011, is **AFFIRMED**. This case is **CLOSED**. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of June, 2012.

_____
KENNETH A. MARRA
United States District Judge